```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

UNITED STATES OF AMERICA        )
                                )
            v.                  )       1:20-CR-398
                                )
JAMES THOMPSON, JR.             )

**<u>MEMORANDUM ORDER</u>**

Before the court is pro se Defendant James Thompson, Jr.'s motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 26.) The Government has responded in opposition. (Doc. 30.) Thompson has filed a supplement, which the court has considered. (Docs. 27, 28.) For the reasons set forth below, the motion for compassionate release will be denied.

**I.   BACKGROUND**

On April 13, 2021, Thompson pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). (Doc. 15.) He was sentenced to sixty months imprisonment on each count to run concurrently. (Doc. 24.) Thompson is currently incarcerated at FCI Butner, and his presumptive release date is April 8, 2025. Fed. Bureau of Prisons, <u>Find an Inmate</u>, at https://www.bop.gov/inmateloc <u>Id.</u> The Government has represented that this earlier release date is due to First Step Act earned time credits. (Doc. 33.) Thompson is 52 years old. <u>Id.</u>

In his motion, filed December 19, 2022, and screened out of 28 U.S.C. § 2255 screening on October 10, 2023, Thompson argues that his medical conditions and inadequate medical treatment are grounds for compassionate release. (Doc. 26.) In response, the Government contends that his conditions are well-managed by BOP and that Thompson is otherwise able to manage his self-care. (Doc. 30 at 1-2.)

## II. ANALYSIS

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended section 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to section 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

2

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public. Id. The defendant bears the burden of establishing that extraordinary and compelling reasons justify his release. See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see, e.g., United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022). Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case. United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished)[1] (citing United States v. High, 997 F.3d 181, 188-89 (4th Cir. 2021)). Additionally, a court, in considering a reduction in sentence pursuant to section 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

---

[1] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

3

As recently amended,[2] United States Sentencing Guideline section 1B1.13(a) essentially reiterates the requirements of section 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2); see also Beck, 425 F. Supp. 3d at 578. Section 1B1.13(b) then provides a non-exhaustive list of examples of extraordinary and compelling reasons to grant a compassionate release. The four enumerated reasons are (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and (4) defendant as a victim of abuse. U.S.S.G. § 1B1.13(b). Section 1B1.13(b)(5) then provides a catch-all for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Section 1B1.13(b)(6) also provides that a court may consider a change in the law when determining "whether the defendant presents an extraordinary and compelling reason, but only where

---

[2] The U.S. Sentencing Guidelines require the court to use the manual in effect unless doing so would present an ex post facto issue. See U.S.S.G. § 1B1.11(b)(1)-(2) (barring the use of the manual in effect on the date of sentencing if it would violate the ex post facto clause, and requiring application of manual "in its entirety"); United States v. Curtin, Crim. No. 14-0467, 2023 WL 8258025, at *2 (D. Md. Nov. 29, 2023) (using manual no longer in effect because amendments "narrow[] the range of possible extraordinary and compelling reasons" in that particular case). The court applies the November 2023 amendments here, as they do not narrow the avenues for relief as compared to the guidelines in effect when Thompson filed his motion.

4

such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."  Finally, section 1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary and compelling reason, but it may be considered along with other circumstances.

Courts maintain broad discretion in the evidence they may consider on a motion to reduce a sentence under the First Step Act.  Concepcion v. United States, 142 S. Ct. 2389, 2403-04 (2022).  However, courts do not have unfettered jurisdiction or discretion to modify criminal sentences.  See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (internal quotations omitted).  A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it to do so.  Even then, section 3582(c) is appropriately invoked only in unusual cases, or, as the Fourth Circuit phrases it, the "most grievous cases."  McCoy, 981 F.3d at 287; see Osman v. United States, Crim. No. 2:10-cr-57-5, 2023 WL 3765246, at *4 (E.D. Va. June 1, 2023) ("The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address 'unusual cases in which an eventual reduction in the length

5

of a term of imprisonment is justified by changed circumstances.'" (citations omitted)). It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality. See Goodwyn, 596 F.3d at 235-36. Nor is it a vehicle to collaterally attack a federal conviction or sentence. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

The Government concedes that Thompson has met the exhaustion requirement. (Doc. 30 at 5 n.1.) The court thus turns to the merits.

Thompson contends that his medical conditions are extraordinary and compelling reasons for compassionate release. The Sentencing Guidelines provide that an extraordinary and compelling reason may exist:

(1) where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is at risk of serious deterioration in health or death," U.S.S.G. § 1B1.13(b)(1)(B);

(2) where the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health

6

>       or death," U.S.S.G. § 1B1.13(b)(1)(C); and
>
> (3) where the defendant is housed at a correctional facility affected by or at imminent risk of being affected by an ongoing outbreak of infectious disease or an ongoing public health emergency, and the defendant is consequently at an increased risk of suffering severe medical complications or death and such risk cannot be adequately mitigated in a timely manner, U.S.S.G. § 1B1.13(b)(1)(D).

Thompson contends that several medical conditions, including asthma, primary hypertension, hyperlipidemia, pre-diabetes, and being overweight, put him at a high risk of severe COVID-19 disease. (Doc. 26 at 1-2.) He has not alleged that these conditions are not being adequately treated or that they limit his ability to provide self-care. His medical records also do not suggest otherwise; in fact, they show that Thompson has had significant issues with compliance. (Doc. 31 at 21, 38, 42.) Thompson is on medication for hypertension, has an inhaler for asthma, and has received diet guidance for hyperlipidemia and prediabetes. (Id. at 108.) His hypertension is listed as "uncontrolled but asymptomatic," but his doctors note that "compliance is an issue." (Id. at 38.)[3] His hyperlipidemia is

---

[3] His blood pressure appears to be mildly elevated, as readings in March 2023 were 134/85, 143/85, and 150/84. (Doc. 31 at 41.)

7

"uncontrolled but asymptomatic." (Id.) His asthma is listed as "stable and asymptomatic." (Id. at 42.) He has received complete dosages of the COVID-19 vaccines. (Id. at 122.)

There is no ongoing outbreak of COVID-19 where Thompson is incarcerated, as FCI Butner currently reports zero open COVID-19 cases. Bureau of Prisons, Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited April 4, 2024). There is also no "ongoing public health emergency." See Ctrs. for Disease Control and Prevention, End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, at https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html ("May 11, 2023, marks the end of the federal COVID-19 PHE declaration."). Thompson has therefore not shown that his risk of COVID-19 infection warrants compassionate release. Gale v. United States, No. 4:17-CR-47, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021) (recognizing hypertension as comorbidity but denying relief where defendant was fully vaccinated), aff'd, 858 F. App'x 100 (4th Cir. 2021); United States v. Garcia, No. 5:03-CR-00020, 2023 WL 6883187, at *4 (W.D.N.C. Oct. 18, 2023) (denying relief where generalized hardship faced by "every defendant" would otherwise "become the 'exception that swallows the general rule of finality'" (quoting United States v. Hancock, No. 1:06-CR-206-2, 2021 WL 848708, at *5

8

(M.D.N.C. Mar. 5, 2021))).[4]

Thompson also points to a patellar tendon rupture in his knee, which occurred while playing basketball in October 2022, and delayed in treatment for it, as grounds for compassionate release. (Doc. 27 at 16.) His records show that he has been treated, albeit with some delays. The day of the incident, Thompson received an initial evaluation, a leg brace, and crutches. (Doc. 31 at 12.) Two days later, he received an x-ray that showed a patellar tendon tear. (Id.) Two weeks later, Thompson had an MRI confirming the tear. (Id.) He then saw several orthopedic specialists for consultation. (Id.) As the Government concedes, there was some delay between visits before he was finally referred to a specialist who could perform surgery. (Id. at 203, 205, 215 (provider stating that injury is "very complicated" because of delay in treatment).)

Thompson has not shown, however, that any delays in treatment were unreasonable or that they complicated his recovery such that compassionate release is warranted. In late 2022, Thompson's provider initially recommended surgery. (Id. at 65.) In January

---

[4] There is evidence that hypertension may increase the risk of severe COVID-19 disease. Ctrs. for Disease Control & Prevention, People with Certain Medical Conditions, at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=Having%20heart%20conditions%20such%20as,American%20Heart%20Association%3A%20COVID%2D19 (updated Apr. 15, 2024) (listing hypertension as "possibly" increasing the risk of severe disease). The court has considered this, but given Thompson's vaccination status and the limited number of active cases at his place of incarceration, his hypertension does not rise to an extraordinary and compelling reason for compassionate release.

2023, Thompson showed reluctance to have surgery at FCI Cumberland, where he was then housed, "due to cleanliness of the facility and concern about infection as well as predicted delay in rehab due to [] delays in current care." (Id. at 57.)  In February 2023, Thompson apparently continued to have hesitation about surgery despite efforts by BOP to assure him of the post-operation care the facility could provide.  (Id. at 54.)  He then requested to be transferred, which was ultimately granted in March 2023.  (Id. at 44 (showing transfer to FMC Butner).)

His treatment notes upon arrival at FMC Butner show that he was initially "awaiting surgery" and that he occasionally experienced "10/10 sharp pain."  (Id. at 24.)  Examination showed that the rupture healed in an "elongated position," and the provider noted that he was "concerned about doing a [surgery] in the face of an extension contracture which might significantly worsen with repair."  (Id. at 23.)  The provider recommended that Thompson work on strengthening and his range of motion before proceeding to surgery.  (Id. at 22.)

By May 2023, Thompson's provider observed that physical therapy resulted in improved range of motion and that his "[p]rognosis is good."  (Id. at 19.)  The provider reported that he told Thompson that surgery may result in reduced function from his current track with physical therapy. (Id. at 17 (stating that if "he can get to the point where he thinks he could function as

10

a cook then [he] wouldn't recommend surgery").) By June 2023, Thompson reported that he was "independent with all self-care and performs his exercises daily." (Id. at 10.) He was able to perform lunges and squats to about 90 degrees and could ambulate on the treadmill for 20 minutes at a 10% grade. (Id.) After a long discussion with his provider on the risks and benefits of surgery, Thompson reportedly stated that he did "not want an operation at th[at] point but [wa]s concerned about future problems and being able to get them addressed in a timely fashion in the BOP." (Id. at 9.) Thompson reported that he could press about 210 pounds on the leg press machine. (Id. at 8.) By September 2023, Thompson reported that was "able to do all that he was used to doing prior to the injury." (Id. at 5.)

In sum, while Thompson's records demonstrate there was some delay in his treatment, Thompson did receive consistent evaluations with providers and physical therapy to aid in his recovery. He has therefore not shown that his knee injury or treatment amount to an extraordinary and compelling reason for compassionate release.[5] Cf. United States v. Beck, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (granting release because delays

---

[5] Thompson also argues that he was taken out of a substance abuse treatment program to be transferred to FMC Butner, which resulted in him losing credits to release him early. (Doc. 27 at 18.) His early release date due to First Step Act earned time credits belies this claim (Doc. 33), as he is expected to be released even earlier than if he served the sentence this court imposed.

11

compromised defendants "prospects for survival"); United States v. Young, No. 4:18CR17, 2024 WL 1653773, at *2 (W.D. Va. Apr. 17, 2024) (denying release where there were some delays in medical treatment but that defendant had repeated access to doctors and treatment).

Thompson's various contentions, considered individually and cumulatively with the circumstances of his knee injury, do not provide grounds for compassionate release.

Even if extraordinary and compelling reasons existed, early release would not be appropriate in this case in light of the § 3553(a) factors. Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Importantly, the "text of § 3553(a) does not make any factor, or combination of factors, dispositive." Kibble, 992 F.3d at 334-35 (Gregory, C.J., concurring). Thus, the court must consider -—

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed –

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . .;

(5) any pertinent policy statement . . . by the Sentencing Commission . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Here, Thompson was held responsible for possessing over 4.5 kilograms of marijuana with the intent to distribute and possessing a semi-automatic assault rifle and a 9 mm handgun. (Doc. 22 ¶ 8.) His criminal history includes 20-year sentence for a conviction for felony second degree murder (pled down from felony murder) and a seven-year sentence for a conviction for felony transportation of more than one pound of marijuana. (Id. ¶¶ 32, 33.) Considering that Thompson is already on track to serve nine months less than his statutory release date and seventeen months less than the time imposed due to First Step Act earned time credits, the court concludes that granting Thompson's motion for compassionate release would fail to

13

adequately reflect the seriousness of the offense of conviction, his criminal history, and the need for deterrence and to promote respect for the law.

Thompson also requests that the court appoint counsel to assist him in this matter. (Doc. 27 at 22.) There is no general constitutional right to appointed counsel in post-conviction proceedings, see United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013), although the court retains discretion to appoint counsel in § 3582(c) proceedings if the interests of justice so require. Thompson is capable of seeking his requested relief without the appointment of counsel, and he has not otherwise demonstrated that appointment of counsel is necessary here. As such, the court will deny his request for appointment of counsel.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Thompson's motion for compassionate release (Doc. 26) is DENIED.

        /s/   Thomas D. Schroeder
      United States District Judge

April 30, 2024